Hand-Delivered

FILED
CHARLOTTE, NC

NOV 20 2026

US DISTRICT COURT
WESTERN DISTRICT OF NC

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| **WILLIAM R. JONES,**<br>Plaintiff,<br><br>v.<br><br>**DARREN W. BENTLEY,** individually;<br>**DARREN W. BENTLEY, PLLC;**<br>**AUTUMN CORPORATION d/b/a AUTUMN CARE OF CORNELIUS;** and<br>**SABER HEALTHCARE GROUP, LLC,**<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CIVIL ACTION NO. 3:26-cv-1017-SCR**<br><br>**VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**<br><br>**JURY TRIAL DEMANDED**<br>*(With Consolidated Composite Exhibit A & Fed. R. Evid. 201 Judicial Notice Schedule Attached)* |

# VERIFIED COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff **William R. Jones**, appearing *pro se*, and complaining of Defendants **Darren W. Bentley**, individually, **Darren W. Bentley, PLLC**, **Autumn Corporation d/b/a Autumn Care of Cornelius**, and **Saber Healthcare Group, LLC**, alleges and says under penalty of perjury as follows:

## I. NATURE OF THE ACTION

1. This civil action arises from an unlawful, bad-faith, and statutorily prohibited debt-collection campaign prosecuted by a commercial skilled nursing facility conglomerate, its North Carolina operating subsidiary, and their retained collection counsel to coerce Plaintiff William R. Jones into personally paying an alleged $29,199.95 nursing home balance owed by a deceased resident.

2. Defendants initiated and relentlessly escalated civil collection litigation in Mecklenburg County Superior Court (*Autumn Corporation d/b/a Autumn Care of Cornelius v. William R. Jones*, File No. 26CV049867-590) despite two absolute, threshold legal bars: (a) the federal Nursing Home Reform Act, 42 U.S.C. § 1396r(c)(5)(A)(ii), which prohibits imposing personal financial liability upon a third-party "Resident Representative" as a condition of admission or continued stay; and (b) North Carolina's four-year Statute of Repose, N.C.G.S. § 39-23.9, which permanently extinguished all claims attacking alleged May–July 2022 real property transfers prior to suit.

3. Rather than dismissing their dead-on-arrival pleading, Defendants weaponized state court procedure by: (a) filing a concealed *ex parte* Motion and Affidavit for Entry of Default one day after receiving Plaintiff's written notice of appearance, resulting in a November 6, 2026 Order Denying Motion for Entry of Default entered by Assistant Clerk of Superior Court Deborah Whitfield (Index #18 & #19); (b) transmitting disputed debt correspondence directly to a non-party bank executive, Movement Bank Vice President Tracie Luck, and issuing an invasive third-party subpoena to real estate closing counsel; (c) serving ninety-four (94) oppressive discovery requests while a dispositive Rule 12(b) Motion to Dismiss was pending (Index #15); and (d) refusing to coordinate a 10-minute short-matters hearing while actively continuing discovery review seven days after receipt of Plaintiff's formal federal Pre-Filing Notice and FRCP 37(e) Litigation Hold.

4. Plaintiff brings this action seeking statutory damages, mandatory civil penalties across ninety-eight (98) discrete violations of the North Carolina Debt Collection Act, treble actual damages, punitive damages up to the statutory cap, declaratory relief, and costs pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; the North Carolina Debt Collection Act ("NCDCA"), N.C.G.S. § 75-50 *et seq.*; the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C.G.S. § 75-1.1 *et seq.*; North Carolina common law of Abuse of Process and N.C.G.S. §§ 1D-15 and 1D-25; and the Declaratory Judgment Act, 28 U.S.C. § 2201.

## II. JURISDICTION AND VENUE

5. This Court has original federal question jurisdiction over Plaintiff's FDCPA claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

6. This Court has supplemental jurisdiction over Plaintiff's state-law claims under the NCDCA, UDTPA, and common-law Abuse of Process pursuant to 28 U.S.C. § 1367(a), because all state claims arise from the exact same case, controversy, and common nucleus of operative facts—namely, Defendants' unlawful collection litigation, third-party disclosures, and procedural abuse in Mecklenburg County File No. 26CV049867-590.

7. This Court has authority to enter declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 regarding Plaintiff's non-liability under 42 U.S.C. § 1396r(c)(5)(A)(ii) and N.C.G.S. § 39-23.9.

8. Venue is proper in the Western District of North Carolina, Charlotte Division, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events, unlawful filings, discovery demands, and injuries giving rise to these claims occurred in Mecklenburg County, North Carolina, and within this judicial district.

## III. PARTIES

9. Plaintiff **William R. Jones** is a natural person, citizen, and resident of North Carolina residing at 1378 Kison Court Northwest, Concord, North Carolina 28027, and is a "consumer" within the meaning of 15 U.S.C. § 1692a(3) and N.C.G.S. § 75-50(1).

10. Defendant **Darren W. Bentley** is a licensed attorney regularly engaged in the business of collecting consumer nursing home and healthcare debts on behalf of third-party corporate creditors across North Carolina courts, including Mecklenburg and Burke Counties, and is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

11. Defendant **Darren W. Bentley, PLLC** is a professional limited liability company through which Defendant Bentley conducts consumer debt-collection litigation and is likewise a "debt collector" under 15 U.S.C. § 1692a(6).

12. Defendant **Autumn Corporation d/b/a Autumn Care of Cornelius** ("Autumn Corporation") is a commercial corporate entity operating skilled nursing facilities in North Carolina, including the Cornelius facility at issue in Mecklenburg County File No. 26CV049867-590, and is a commercial "debt collector" subject to N.C.G.S. § 75-50(3) and N.C.G.S. § 75-1.1 without protection under the learned-profession exemption of N.C.G.S. § 75-1.1(b).

13. Defendant **Saber Healthcare Group, LLC** ("Saber Healthcare") is a multi-state commercial healthcare operator headquartered in Beachwood, Ohio, that directs, manages, and oversees billing, collection policies, and third-party litigation for its affiliated facilities, including Autumn Corporation, and is likewise a commercial entity subject to the NCDCA and Chapter 75 without learned-profession immunity.

## IV. STATEMENT OF FACTS

### A. The Federal Nursing Home Reform Act Bar & Extinguished Transfers

14. On September 19, 2023, Plaintiff executed a skilled nursing facility Admission Agreement with Defendant Autumn Corporation solely in the representative capacity of "Resident Representative" (Mecklenburg County Docket File No. 26CV049867-590, Index #1). Plaintiff never voluntarily signed as a personal guarantor or agreed to assume personal liability for facility charges.

15. Under the federal Nursing Home Reform Act, 42 U.S.C. § 1396r(c)(5)(A)(ii), a nursing facility participating in Medicare or Medicaid is strictly prohibited from requiring a third-party guarantee of payment as a condition of admission or continued stay. Any contractual effort to convert a Resident Representative signature into personal debt liability is void and illegal as a matter of federal law.

16. Despite that federal prohibition, Defendants filed Mecklenburg County Superior Court File No. 26CV049867-590 demanding $29,199.95 personally from Plaintiff and asserting fraudulent-transfer allegations targeting real property transactions occurring in May through July 2022.

17. Under North Carolina's Uniform Voidable Transactions Act Statute of Repose, N.C.G.S. § 39-23.9, any claim attacking a real property transfer is permanently extinguished four (4) years after the transfer was made. Because more than four years elapsed between May–July 2022 and Defendants' civil action, Defendants' substantive claims were extinguished as a matter of law before the complaint was ever filed.

18. Furthermore, official public records filed in the Mecklenburg action—specifically the March 9, 2023 Uniform Residential Loan Application (State Docket Index #12)—establish Plaintiff's bona fide $57,000.00 recorded financial obligation encumbering 101 Park Drive, Stanley, North Carolina, directly refuting Defendants' bad-faith asset-transfer narrative. Plaintiff has also properly addressed estate administration matters in Lincoln County Probate File No. 26 E 00287-540 via e-filed Fiduciary Status Response (Envelope # 8656727).

**B. Concealment of Written Appearance & Judicial Denial of Default**

19. On October 12, 2026, Plaintiff transmitted direct written notice to Defendant Bentley explicitly appearing in File No. 26CV049867-590 and giving notice of Plaintiff's intent to contest and defend the action (Mecklenburg State Docket Index #13, Exhibit B).

20. On October 13, 2026—the very next day—Defendant Bentley filed an *ex parte* Motion and Affidavit for Entry of Default against Plaintiff (State Docket Index #9). In violation of North Carolina Rule of Professional Conduct 3.3(d), which mandates full disclosure of all material facts to a tribunal in an *ex parte* proceeding, Defendant Bentley deliberately omitted and concealed Plaintiff's October 12, 2026 written notice of appearance from the Clerk of Superior Court.

21. On October 18, 2026, Plaintiff timely filed a dispositive Rule 12(b)(6) Motion to Dismiss (State Docket Index #11) asserting the federal Nursing Home Reform Act bar and North Carolina's four-year Statute of Repose. Under N.C. R. Civ. P. 12(a)(1), the filing of a Rule 12(b) motion automatically tolls a defendant's time to answer and legally precludes entry of default.

22. On October 26–27, 2026, Plaintiff filed Defendant's Verified Motion for Sanctions and Motion to Strike Default (State Docket Index #13), placing Defendants on formal docketed notice of their candor violations and statutory defects.

23. On November 6, 2026, at 2:35–2:37 PM, Assistant Clerk of Superior Court Deborah Whitfield entered an official **Order Denying Motion for Entry of Default** (State Docket Index #18) and served notice electronically upon Defendant Bentley (Index #19), explicitly ruling that Plaintiff's timely Rule 12(b) Motion to Dismiss tolled the responsive pleading deadline and legally prevented entry of default (Composite Exhibit A, Exhibits A-1 & A-2).

24. Despite Assistant Clerk Whitfield's judicial order exposing the impropriety of his *ex parte* default filing, Defendants neither withdrew their extinguished claim nor ceased aggressive collection activity.

**C. Unlawful Third-Party Bank Disclosure & Closing-Counsel Subpoena**

25. During the collection campaign, Defendant Bentley transmitted disputed debt correspondence directly to a non-party financial institution officer, Movement Bank Vice President Tracie Luck, without Plaintiff's prior consent or express court permission (Mecklenburg State Docket Index #13).

26. Communicating with a third-party banking officer regarding an alleged, disputed consumer debt violates the strict privacy prohibitions of 15 U.S.C. § 1692c(b) and N.C.G.S. § 75-53, inflicting immediate reputational injury and jeopardizing Plaintiff's banking relationships.

27. Defendants further escalated third-party harassment by issuing an invasive third-party subpoena directed to real estate closing counsel concerning extinguished 2022 property transactions, designed to embarrass Plaintiff and coerce payment of a debt Plaintiff does not legally owe.

**D. Ninety-Four-Count Discovery Harassment & Procedural Delay**

28. On October 29, 2026—while Plaintiff's dispositive Rule 12(b) Motion to Dismiss (Index #11) and Verified Motion for Sanctions (Index #13) were pending—Defendants served Plaintiff with a massive discovery packet consisting of ninety-four (94) separate Interrogatories, Requests for Production, and Requests for Admission (State Docket Index #15; Composite Exhibit A, Exhibit A-1).

29. Serving ninety-four (94) intrusive discovery demands on an unrepresented consumer to collect a $29,199.95 balance barred by federal law and extinguished by a Statute of Repose served no legitimate evidentiary purpose; its sole objective was to bury Plaintiff in litigation burdens and extort settlement of an unenforceable debt.

30. On November 3, 2026, and November 9, 2026, Plaintiff was forced to file Motions for Protective Order and to Compel/Stay Discovery (State Docket Index #16 & Index #20; Composite Exhibit A, Exhibit A-1).

31. When Plaintiff sought a prompt 10-minute short-matters ("firecracker docket") hearing in Mecklenburg County Superior Court so a judge could rule on threshold dismissal and protective relief, Defendant Bentley emailed Mecklenburg Caseflow Management on November 5, 2026, and Plaintiff on November 6, 2026 (State Docket Index #17; Composite Exhibit A, Exhibit A-3), refusing to allow any portion of Plaintiff's motions on a 10-minute slot, insisting hearings required "2 to 4 hours," and seeking to push all hearings into January 2027.

32. To block the November 17, 2026 Mecklenburg short-matters setting, Defendant Bentley represented to Caseflow Management that he had a conflicting "trial scheduled in Burke County with a docket call at 9 am" on November 17, 2026. Official North Carolina eCourts records for Burke County District Court (*Autumn Corp d/b/a Autumn Care of Drexel-SNF v. Connie Powers & Lisa Ferrell*, File No. 24CVD001422-110, filed October 15, 2024) confirm that the November 17, 2026 setting was a single pre-scheduled "Non-Jury Hearing" continued by consent from an August 4, 2026 Status Review before Judge Matthew D. Cabe—part of a multi-year pattern of collection litigation conducted by Defendant Bentley for Autumn Corporation (Composite Exhibit A, Exhibit A-4).

33. On November 10, 2026, Mecklenburg Superior Court Caseflow Coordinator Tiffany Stinson-Wah issued remote Webex Virtual Hearing credentials for Superior Court Civil Motions (Courtroom 6170) (Composite Exhibit A, Exhibit A-7), further demonstrating that Defendants' refusal to cooperate in brief virtual scheduling was designed to prolong discovery pressure on an extinguished claim.

### E. Pre-Suit Notice, FRCP 37(e) Hold, & Post-Notice Willful Escalation

34. On November 6, 2026, Plaintiff served Defendant Bentley with a formal *Rule 408 Pre-Filing Settlement Demand, Mandatory E&O Insurer Tender Notice, and FRCP 37(e) Litigation Hold*, attaching an inline draft of this Verified Federal Complaint detailing every statutory violation and providing a pre-suit cure window expiring Friday, November 13, 2026, at 5:00 PM EST (Composite Exhibit A, Exhibit A-5).

35. Defendants were therefore on indisputable, actual written notice of: (a) the federal Nursing Home Reform Act prohibition; (b) the four-year Statute of Repose bar; (c) Assistant Clerk Whitfield's November 6 Order Denying Entry of Default; (d) the unlawful Movement Bank third-party disclosure; and (e) their legal preservation obligations under Fed. R. Civ. P. 37(e).

36. On November 13, 2026, at 10:50 AM—seven days after receiving the Clerk's denial order and Plaintiff's federal Pre-Filing Notice—Defendant Bentley emailed Plaintiff invoking Rule 26(b)(5)(b), reserving rights to seek judicial intervention over materials, and expressly confirming that he would "proceed with reviewing the operative discovery responses" (Composite Exhibit A, Exhibit A-6).

37. At 5:00 PM EST on November 13, 2026, Defendants' corporate pre-suit cure deadline expired in complete silence, leaving Plaintiff no alternative but to file this federal action.

38. Defendants' deliberate post-notice continuation of discovery and collection prosecution completely forecloses any "bona fide error" defense under 15 U.S.C. § 1692k(c) and demonstrates willful, wanton, and malicious disregard of Plaintiff's statutory rights.

## V. CAUSES OF ACTION

**COUNT I: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (15 U.S.C. §§ 1692c(b), 1692e, 1692f, 1692k — Against Defendants Darren W. Bentley & Darren W. Bentley, PLLC)**

39. Plaintiff realleges and incorporates Paragraphs 1 through 38 as if fully set forth herein.

40. Defendants Darren W. Bentley and Darren W. Bentley, PLLC are "debt collectors" under 15 U.S.C. § 1692a(6) attempting to collect an alleged consumer healthcare debt from Plaintiff.

41. Defendants violated **15 U.S.C. § 1692c(b)** by communicating directly with a non-party banking officer, Movement Bank Vice President Tracie Luck, in connection with the collection of a disputed consumer debt without Plaintiff's prior consent or court permission.

42. Defendants violated **15 U.S.C. § 1692e(2)(A), § 1692e(5), and § 1692e(10)** by falsely representing the character, legal status, and enforceability of a debt barred by 42 U.S.C. § 1396r(c)(5)(A)(ii) and extinguished by N.C.G.S. § 39-23.9, and by filing a deceptive *ex parte* default affidavit concealing Plaintiff's October 12, 2026 written notice of appearance.

43. Defendants violated **15 U.S.C. § 1692f** by employing unfair and unconscionable means to collect an unauthorized amount, including issuing a third-party closing-counsel subpoena, serving ninety-four (94) oppressive discovery requests during a pending threshold dismissal motion, and continuing discovery prosecution after receiving notice of the Clerk's November 6 Order Denying Default.

44. Defendants' post-notice conduct on November 13, 2026 establishes intentional non-compliance and negates any defense under 15 U.S.C. § 1692k(c).

45. Pursuant to 15 U.S.C. § 1692k(a), Plaintiff is entitled to actual damages, maximum statutory damages of $1,000.00, litigation costs, and reasonable attorney's fees should Plaintiff retain counsel of record.

**COUNT II: VIOLATIONS OF THE NORTH CAROLINA DEBT COLLECTION ACT (N.C.G.S. §§ 75-50 et seq., 75-53, 75-54, 75-55, 75-56(b) — Against Corporate Defendants Autumn Corporation & Saber Healthcare Group, LLC)**

46. Plaintiff realleges and incorporates Paragraphs 1 through 45 as if fully set forth herein.

47. Defendants Autumn Corporation and Saber Healthcare Group, LLC are commercial healthcare corporations engaged in debt collection directly and through their authorized agent, and are "debt collectors" under N.C.G.S. § 75-50(3). As commercial entities, they do not qualify for the learned-profession exemption of N.C.G.S. § 75-1.1(b).

48. Corporate Defendants violated **N.C.G.S. § 75-53** (Unreasonable Publication) through the unauthorized disclosure of disputed debt allegations to non-party Movement Bank Vice President Tracie Luck and through the invasive closing-counsel subpoena.

49. Corporate Defendants violated **N.C.G.S. § 75-54** (Deceptive Representation) by asserting unenforceable personal liability contrary to 42 U.S.C. § 1396r(c)(5)(A)(ii), prosecuting transfers extinguished by N.C.G.S. § 39-23.9, and procuring a concealed *ex parte* default filing rejected by the Clerk on November 6, 2026.

50. Corporate Defendants violated **N.C.G.S. § 75-55** (Unconscionable Means) by collecting or attempting to collect charges not legally owed by Plaintiff and serving ninety-four (94) harassing discovery requests on an extinguished claim to coerce payment.

51. Corporate Defendants committed at least **ninety-eight (98) discrete statutory violations** of Article 2 of Chapter 75: (a) filing and maintaining the statutorily barred personal-liability action; (b) filing the concealed October 13, 2026 *ex parte* default application; (c) unlawfully disclosing the disputed debt to Movement Bank VP Tracie Luck; (d) issuing the improper closing-counsel subpoena; and (e) serving ninety-four (94) separate improper discovery demands on October 29, 2026.

52. Pursuant to **N.C.G.S. § 75-56(b)**, any debt collector failing to comply with Article 2 is liable for a mandatory civil penalty of not less than **$500.00** nor greater than **$4,000.00 per violation**, establishing mandatory statutory penalty exposure between **$49,000.00** (98 × $500.00) and **$392,000.00** (98 × $4,000.00).

53. Plaintiff has suffered direct economic costs, probate disruption, reputational injury, and severe emotional distress proximately caused by Corporate Defendants' unlawful debt-collection practices.

**COUNT III: UNFAIR AND DECEPTIVE TRADE PRACTICES**
**(N.C.G.S. §§ 75-1.1, 75-16, 75-16.1 — Against Corporate Defendants Autumn Corporation & Saber Healthcare Group, LLC)**

54. Plaintiff realleges and incorporates Paragraphs 1 through 53 as if fully set forth herein.

55. Corporate Defendants' systemic practice of pursuing non-guarantor family members and Resident Representatives on time-barred or federally prohibited nursing home balances occurs in and affects commerce within North Carolina, as further evidenced by multi-year collection actions across multiple counties (Composite Exhibit A, Exhibit A-4).

56. Corporate Defendants' conduct—violating the federal Nursing Home Reform Act, exploiting a concealed *ex parte* default filing, publishing disputed debt claims to a consumer's bank officer, and refusing to cure after receiving formal written notice—constitutes unfair and deceptive acts or practices in violation of N.C.G.S. § 75-1.1.

57. Corporate Defendants' acts proximately caused actual damages to Plaintiff, including out-of-pocket litigation and probate expenses, time lost defending extinguished claims, and reputational harm.

58. Pursuant to **N.C.G.S. § 75-16**, all actual damages awarded to Plaintiff against Corporate Defendants must be automatically trebled as a matter of law.

59. Because Corporate Defendants willfully engaged in these acts and made an unwarranted refusal to resolve the matter after formal pre-suit notice, Plaintiff reserves the right to recover statutory attorney's fees under N.C.G.S. § 75-16.1 should Plaintiff retain counsel.

**COUNT IV: COMMON-LAW ABUSE OF PROCESS & PUNITIVE DAMAGES**
**(N.C.G.S. §§ 1D-15, 1D-25 — Against All Defendants)**

60. Plaintiff realleges and incorporates Paragraphs 1 through 59 as if fully set forth herein.

61. Following the issuance of civil process in Mecklenburg County File No. 26CV049867-590, Defendants acted with an ulterior, collateral purpose not proper in the regular prosecution of a civil proceeding: namely, to coerce Plaintiff into paying a $29,199.95 debt barred by federal law and extinguished by North Carolina's Statute of Repose through procedural ambush, financial exhaustion, and third-party embarrassment.

62. Defendants committed multiple willful acts in the improper use of civil process after initiation of suit, including: (a) filing a concealed *ex parte* default motion on October 13, 2026 while hiding Plaintiff's October 12 written notice of appearance; (b) deploying a third-party subpoena to closing counsel and debt correspondence to Movement Bank VP Tracie Luck; (c) serving ninety-four (94) discovery demands while a dispositive Rule 12(b) motion was pending; (d) obstructing brief virtual/short-matters judicial review in Mecklenburg County; and (e) issuing a November 13, 2026 Rule 26(b)(5)(b) escalation email seven days after Assistant Clerk Whitfield denied default and Plaintiff served formal federal notice.

63. Defendants' conduct was willful, wanton, malicious, and undertaken in conscious and intentional disregard of Plaintiff's legal rights, satisfying the aggravating-factor requirements of **N.C.G.S. § 1D-15(a)**.

64. Upon information and belief, officers, directors, or managers of Corporate Defendants Autumn Corporation and Saber Healthcare Group, LLC participated in, authorized, or ratified the ongoing collection prosecution and post-notice refusal to withdraw File No. 26CV049867-590 within the meaning of **N.C.G.S. § 1D-15(c)**.

65. As a direct and proximate result of Defendants' abuse of process, Plaintiff suffered actual pecuniary loss, reputational damage, and emotional distress.

66. Plaintiff is entitled to recover actual damages plus punitive damages up to the statutory cap of **$250,000.00** (or three times compensatory damages, whichever is greater) pursuant to **N.C.G.S. § 1D-25(b)**.

**COUNT V: DECLARATORY RELIEF**
**(28 U.S.C. § 2201 — Against All Defendants)**

67. Plaintiff realleges and incorporates Paragraphs 1 through 66 as if fully set forth herein.

68. An actual, substantial, and justiciable controversy exists between Plaintiff and Defendants concerning Plaintiff's personal liability for the alleged $29,199.95 balance sought in Mecklenburg County File No. 26CV049867-590.

69. Plaintiff is entitled to a judicial declaration that: (a) the September 19, 2023 Admission Agreement imposes zero personal financial liability on Plaintiff under 42 U.S.C. § 1396r(c)(5)(A)(ii); and (b) all claims challenging May–July 2022 transfers were permanently extinguished by N.C.G.S. § 39-23.9 prior to suit.

70. Declaratory relief will terminate the legal uncertainty and halt Defendants' continuing unlawful collection practices.

## VI. PRAYER FOR RELIEF & DEMAND FOR JURY TRIAL

WHEREFORE, Plaintiff William R. Jones respectfully prays that the Court enter judgment in his favor and against Defendants, jointly and severally where permitted by law, as follows:

1. **On Count I (FDCPA — Bentley Defendants):** Awarding actual damages, maximum statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a), costs of litigation, and reasonable attorney's fees if counsel is retained;
2. **On Count II (NCDCA — Corporate Defendants):** Awarding actual damages plus mandatory statutory civil penalties of $500.00 to $4,000.00 for each of the ninety-eight (98) discrete statutory violations pursuant to N.C.G.S. § 75-56(b) ($49,000.00 statutory minimum to $392,000.00 statutory maximum);
3. **On Count III (UDTPA — Corporate Defendants):** Awarding actual damages automatically trebled pursuant to N.C.G.S. § 75-16, together with costs and applicable statutory fees under N.C.G.S. § 75-16.1;

4. **On Count IV (Abuse of Process & Punitive Damages — All Defendants):** Awarding compensatory damages plus punitive damages up to the statutory cap of $250,000.00 pursuant to N.C.G.S. §§ 1D-15 and 1D-25;
5. **On Count V (Declaratory Relief):** Declaring that Plaintiff bears zero personal liability for the alleged $29,199.95 balance under 42 U.S.C. § 1396r(c)(5)(A)(ii) and that all May–July 2022 transfer claims are extinguished under N.C.G.S. § 39-23.9; and
6. **General Relief & Jury Demand:** Awarding pre-judgment and post-judgment interest, all taxable costs, and such other and further relief as the Court deems just and proper. **Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38.**

## VERIFICATION PURSUANT TO 28 U.S.C. § 1746

I, **William R. Jones**, declare under penalty of perjury under the laws of the United States of America that I am the Plaintiff in the above-captioned action, that I have read the foregoing Verified Complaint and attached Composite Exhibit A, and that the factual allegations stated therein are true and correct to the best of my personal knowledge, except as to matters stated upon information and belief, which I believe to be true.

**Executed on:** November 20, 2026

Respectfully submitted,

**William R. Jones, Plaintiff Pro Se**
1378 Kison Court Northwest
Concord, NC 28027
Telephone: 828-546-6767
Email: accountsWJones357@pm.me

---

**COMPOSITE EXHIBIT A TO VERIFIED COMPLAINT**

*Core State Court Orders, Official eCourts Docket Records, Escalation Correspondence & Fed. R. Evid. 201 Judicial Notice Schedule*

---

Pursuant to Federal Rules of Civil Procedure 8(a) and 10(c) and Federal Rule of Evidence 201, Plaintiff incorporates this **Composite Exhibit A** into the Verified Complaint, providing verbatim transcriptions of official Mecklenburg County court records and inter-party correspondence, official Burke County eCourts docket captures, and a formal Judicial Notice Schedule of public North Carolina General Court of Justice filings.